RON BENDER (SBN 143364)
BETH ANN R. YOUNG (SBN 143945)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; BRY@LNBYG.COM; KJM@LNBYG.COM

Proposed Counsel for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>AGTJ13, LLC, a Delaware limited liability company,<br><br>      Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>AGTJ Manager, LLC, a California limited liability company,<br><br>      Debtor and Debtor in Possession.<br>_____<br><br>☐ Affects both Debtors<br><br>☒ Affects AGTJ13, LLC only<br><br>☐ Affects AGTJ13 Manager, LLC only | Lead Case No.: 2:24-bk-11409-SK<br><br>Jointly administered with:<br>2:24-bk-11412-SK<br><br>Chapter 11 Cases<br><br>**AGTJ13, LLC'S EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LAFAYETTE JACKSON SHARP, IV**<br><br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 1575<br>      255 E. Temple Street<br>      Los Angeles, CA 90012 |

**TO ALL CREDITORS; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

Pursuant to Local Bankruptcy Rules 2081-1(a)(9), 4001-2, 9075-1, and Sections 361 and 363(c)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") and Rules 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure, AGTJ13, LLC ("Property Co" or the "Debtor"), a debtor and debtor in possession in the above-referenced, jointly-administered Chapter 11 bankruptcy cases, hereby moves, for the entry of an order authorizing the Debtor to use cash collateral on an interim basis pending a final hearing in order to pay certain post-petition operating expenses and provide deposits as set forth in the disbursements schedule/budget ("Budget") listed below.  Property Co's secured creditors Lone Oak Fund, LLC ("Lone Oak") and CPIF California, LLC ("CPIF", and together with Lone Oak, the "Lenders") assert an interest in the rents and other proceeds (including CAM charges collected) (collectively "Rents") generated by Property Co's real property located at 450 S. Western Avenue, Los Angeles, CA 90020 (the "Property"), but consent to the use of Rents for the limited purpose of paying Property Co's actual, post-petition expenses which are due and payable on or before April 30, 2024, subject to:

1. The entry of the interim order attached as **Exhibit 1** to the annexed Declaration of Lafayette Jackson Sharp, IV (the "Declaration");

2. The payment of March 2024 debt service to Lone Oak Fund, LLC (the Debtor's senior secured lender) in the amount of $221,090.83 through the release of funds controlled by CPIF but that Debtor asserts is cash collateral;

3. The payment of April 2024 debt service to Lone Oak Fund, LLC (the Debtor's senior secured lender) in the amount of $221,090.83, *provided* that Property Co collect's sufficient Rents in April 2024 to pay the April 2024 debt service and the April 2024 operating expenses described below from Rents collected in April 2024 together with a ten (10%) reserve calculated based on April 2024 expenses listed below, to be paid promptly upon receipt of such Rent in April 2024.

4.  Property Co's agreement that it will not disburse cash to pay the expenses set forth in the Budget until such expenses are actually due and payable; and

5.  The Lenders' receipt of copies of invoices prior to payment of the expenses set forth in the Budget (provided, however, that the deposits to L.A. Department of Water and Power and Athens Services do not require the provision of invoices prior to payment).

While the Lenders consent to the use of the Rents as set forth in this Motion, the Court should be aware that CPIF contends that the Rents do not constitute property of the estate and the Debtor disagrees with that contention. Further, Lone Oak contends that its rights, claims and liens are senior to those of CPIF in and to, among other things, the Rents. The Debtor, Lone Oak and CPIF do agree that, to the extent the Rents constitute property of the estate, the Rents constitute cash collateral. This Motion does not seek at this time and in connection with the interim relief requested herein a determination on whether Property Co has an interest in the Rents or whether the rents constitute property of the estate. That dispute will be addressed in other proceedings, including the *Motion Of CPIF California, LLC For An Order Granting Adequate Protection And Prohibiting Use Of Cash Collateral Pursuant To Section 363(e) Of The Bankruptcy Code* (the "CPIF Adequate Protection Motion") [Doc 22].[1] A hearing on the CPIF Adequate Protection Motion is scheduled for April 24, 2024, at 9:00 a.m.

However, Property Co and the Lenders have separately entered into the *Stipulation Between Debtor, CPIF California, LLC, And Lone Oak Fund, LLC Regarding Collection And Deposits Of Rents And Other Proceeds* ("Rent Stipulation") [Doc 39] pursuant to which Property Co is authorized to collect rents and is required to deposit rents into a debtor-in-possession account designated as the "Specified Account" in the Rent Collection Stipulation, pending a determination by the Court regarding whether the Rents constitute property of the estate. The Court entered an order approving the Rent Stipulation on March 25, 2024 [Doc 52].

---

[1] Property Co reserves the right to request relief/a determination that the Rents constitute property of the estate, and Property Co will oppose the CPIF Adequate Protection Motion.

Additionally, CPIF has filed the *Motion Of CPIF California, LLC For The Appointment Of A Chapter 11 Trustee* (the "Trustee Motion"), which Property Co has opposed, which is scheduled to be heard on April 24, 2024.

In the meantime, and pending the Court's rulings on the CPIF Adequate Protection Motion and the Trustee Motion, Property Co and the Lenders have been able to reach agreement on the payment of certain basic expenses of the Property and the provision of deposits, comprised of the following expenses and deposits:

| | Proposed Deposit | Budgeted Payments for Postpetition Services Provided through March 31, 2024 | Budgeted Payments for Postpetition Services Provided from April 1, 2024 through April 30, 2024 | Totals |
|---|---|---|---|---|
| Maintenance and Cleaning Services - Acosta Power Sweeping Services, Inc. | | $25,000.00 | $25,000.00 | |
| Utilities - Los Angeles Dept. of Water and Power | $33,970.19 | $25,000.00 | $25,000.00 | |
| Waste Disposal Services - Athens Services | $45,000.00 | $15,000.00 | $15,000.00 | |
| Insurance - Inszone Insurance Services, LLC/AmTrust | | $6,246.00 | $6,246.00 | |
| Security Services - Ju Ma Security | | $20,227.50 | $18,000.00 | |
| Elevator and Escalator Services - Mitsubishi Electric US, Inc. | | $5,200.00 | $5,200.00 | |
| **TOTAL** | **$78,970.19** | **$96,673.50** | **$94,446.00** | **$270,089.69** |

These expenses are for the basic operations of the Property such as cleaning and maintenance services, insurance, utilities and security. The deposits proposed herein are based on discussions Property Co (through its counsel) has had with counsel to Athens Services and counsel to L.A. Department of Water and Power, regarding the provision of adequate assurance of payment for post-petition services.

Property Co presently has in its possession approximately $275,719.27 in the Specified Account and $4,836.34 in its other debtor-in-possession account.  Additionally, Property Co understands there is the sum of $298,772.69 in an account at First Republic Bank that is in the control of CPIF (the "DACA Account").  Additionally, Property Co expects to continue to receive rents from tenants (though it appears that Property Co's anchor tenant is refusing to pay the full amount of rent and CAM charges that it had been paying prior to the Petition Date).  Even if Property Co does not receive the full amount of rent and CAM charges from its anchor tenant, however, Property Co expects that it will have sufficient funds to pay all of the operating expenses set forth above as well as the initial adequate protection payment to Lone Oak in the amount of $221,090.83 (which will be funded from the cash in the First Republic Bank account).[2]

As described above, the Lenders consent to the use of Rents for the purpose of paying the expenses set forth above, and have conditioned their consent to use Rents to pay such expenses on the payment of debt service payments to Lone Oak (provided that the adequate protection/debt service payment for April 2024 to Lone Oak is conditioned upon Property Co collecting sufficient rents and maintaining a sufficient reserve as set forth above) and the terms of the proposed interim order attached as **Exhibit 1** to the Declaration.

Property Co requests an emergency hearing on the Motion in order to be able to ensure vendors and utility service providers that it has received authority to pay for post-petition expenses and in order to ensure that vendors continue to provide services for the benefit of the Property.  Property Co has made extensive efforts to arrive at a consensual arrangement with its Lenders for the payment of critical expenses pending the Court's ruling on the CPIF Adequate Protection Motion and the Trustee Motion and filed this motion as soon as Property Co was able to reach an agreement with the Lenders and memorialize the

---

[2]  Nothing herein shall impair, modify or affect any of Lone Oak's or CPIF's rights with respect to: (1) whether the Debtor has or does not have an interest in the Rents; (2) whether CPIF or Lone Oak has or does not have an interest in the Rents and/or the priority of the interests of CPIF and Lone Oak; (3) whether the Rents do or do not constitute property of the estate; and (4) whether adequate protection has or has not been provided to Lone Oak or CPIF.  All of the parties' respective rights and remedies are hereby preserved.

agreement in this Motion and proposed order.  The vendors proposed to be paid have been providing services to the Property in good faith and Property Co expects will continue to provide services to the Property, provided that arrangements are made to immediately ensure such vendors that they will receive payment for these most basic services.  The relief requested herein will ensure that the Property remains maintained, secured, insured and operating.  Property Co and its Lenders all agree that the use of Rents for this purpose is appropriate and the Lenders consent to the use of Rents for the purposes set forth in the Motion and support the Motion and the payment of these proposed expenses.  Certain vendors have already submitted invoices to the Debtor for March 2024 services that they have already provided and are required to be paid and should be paid as soon as possible.  Additional expenses in April 2024 will arise over the course of the next few weeks and it would be extremely beneficial to Property Co and its relationships with vendors for Property Co to be able to represent to vendors that it has received Lender consent and Court approval to pay such expenses.  Accordingly, Property Co respectfully submits that an emergency hearing is warranted and necessary.   The relief requested herein will ensure that the Property remains maintained, secured, insured and operating.  Property Co and its Lenders all agree that the use of Rents for this purpose is appropriate and the Lenders consent to the use of Rents for the purposes set forth in this Motion and support this Motion.

Pursuant to Local Bankruptcy Rule 4001-2, Property Co makes the following statements regarding the relief requested by Property Co pertaining to Property Co's use of Rents and the proposed order thereon attached as **Exhibit 1** to the Declaration.

| Provision | Paragraph |
|---|---|
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's lien or debt. | No, other than an agreement that certain funds are cash collateral |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's lien and liens held by | No |

| **Provision** | **Paragraph** |
|---|---|
| persons who are not party to the stipulation, or which create a lien senior or equal to any existing lien. | |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds. | No |
| Provisions that operate, as a practical matter, to divest the debtor in possession of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No – except for standard replacement lien language in the proposed order. |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent. | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

The relief sought in this Motion is based upon this Motion, the annexed Memorandum and Declaration in support of this Motion, the statements, arguments and representations of counsel to be made at the hearing on this Motion, and any other evidence properly presented to the Court at or prior to the hearing on this Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

1.    granting this Motion on an interim basis pending a final hearing;

2.    authorizing Property Co to use Rents to pay all of the expenses set forth in the Budget on an interim basis pending a final hearing in accordance with the proposed interim order attached as **Exhibit 1**;

3.    setting a final hearing on this Motion and a supplemental briefing schedule for the Court to determine at the final hearing whether to authorize the use of cash collateral/Rents after April 24, 2024; and

4.    granting such other and further relief as the Court deems just and proper.

Dated: March 29, 2024                             AGTJ13, LLC, et al.

                                      By:    _/s/ Krikor J. Meshefejian_
                                             RON BENDER
                                             BETH ANN R. YOUNG
                                             KRIKOR J. MESHEFEJIAN
                                             LEVENE, NEALE, BENDER, YOO
                                                  & GOLUBCHIK L.L.P.
                                             Proposed Counsel for Chapter 11 Debtors
                                             and Debtors in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

A.    **The Debtors And The Property.**

1.    On February 26, 2024, AGTJ13, LLC ("Property Co") and its parent LLC, AGTJ13 Manager, LLC ("Hold Co" and together with Property Co, the "Debtors"), each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Hold Co's case is pending before this Court and is designated as Case No. 2:23-11412-SK.  Since the Petition Date, the Debtors have operated their businesses and managed their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    Property Co is wholly owned by Hold Co.  Property Co is the owner of that certain real property located at 450 South Western Avenue, Los Angeles, CA (the "Property").  The Property is a highly valuable, highly-coveted outdoor multi-use retail shopping center in the heart of Koreatown.  The Property is approximately 100% leased pursuant to a vacancy guarantee provided by Gaju Market[3].  The Property contains an eclectic mix of tenants, including Gaju Market (a large grocery store occupying approximately 45% of the Property) which is Property Co's anchor tenant.  The Property is managed day-to-day by a third-party property management company – Secured Properties, Inc./Secured Properties Management Group Inc.

3.    The Property generates rents of more than $400,000 per month, collects CAM charges of approximately $150,000+ per month, and has operating expenses of approximately $150,000+ per month.  However, on March 22, 2024, Property Co received rents and CAM charges from its anchor tenant Gaju Market Corporation which were in amounts substantially less than Gaju Market Corporation has paid over

---

[3] Pursuant to Property Co's Commercial Lease Agreement, as amended, with Gaju Market, Gaju Market has agreed to guaranty base rent of $4.00/square foot NNN and $1.50 in CAM charges with 2.5% annual increases for any vacancies or non-payment of rents, of CAM charges, such that Property Co is entitled to receive 100% of rents and CAMs through approximately November 13, 2025.  Gaju Market Corporation has now taken the position that the amendment to the lease and its vacancy guarantee are "contested" and has refused to pay March 2024 rents, CAM charges and the vacancy "backstop" in the amounts set forth in the amended lease.  Property Co is investigating this matter and reserves all rights.

the past approximately three years.  A dispute has arose between Property Co and Gaju Market Corporation regarding rents and CAM charges due to Property Co and Property Co intends to seek appropriate relief. Property Co presently has in its possession approximately $275,719.27 in the Specified Account and $4,836.34 in its other debtor-in-possession account.  Additionally, there is the sum of $298,772.69 in an account at First Republic Bank that is in the control of CPIF (which CPIF contends does not constitute property of the estate).  Additionally, Property Co expects to continue to receive rents from tenants (though it appears that Property Co's anchor tenant is refusing to pay the full amount of rent and CAM charges that it had been paying prior to the Petition Date).  Even if Property Co does not receive the full amount of rent and CAM charges from its anchor tenant, however, Property Co expects that it will have sufficient funds to pay all of the operating expenses set forth in this Motion.

4.      Property Co believes that the Property is worth potentially more than $100,000,000 and its Schedules of Assets and Liabilities list the Property at a current value of $100,000,000.

**B.      Property Co's Purchase Of The Property In December 2020.**

5.      Property Co purchased the Property over three years ago, in December 2020 from 450 S. Western, LLC ("Western"), for $57,500,000, pursuant to a section 363 sale conducted in Western's chapter 11 case which was commenced on January 10, 2020 and originally assigned to the Honorable Ernest M. Robles, Case No. 2:20bk-10264-SK (the case was subsequently assigned to the Honorable Sandra R. Klein).  The bankruptcy court in Western's bankruptcy case entered a sale order on October 23, 2020, authorizing and approving the sale of the Property to Jake Sharp Capital (which is an affiliate of the Debtors) or its assignee, as the winning bidder at an auction conducted in Western's bankruptcy case.[4]  Jake Sharp Capital's designated assignee was Property Co, which acquired and has owned the Property since December 2020.

6.      Western sold the Property to Property Co years ago.  There is no material connection between Western's bankruptcy cases and these cases, except the Debtors understand and disclose that a

---

[4] The bankruptcy court in Western's bankruptcy case confirmed Western's chapter 11 plan of liquidation after the sale of the Property, and in February 2024, the bankruptcy court in Western's bankruptcy case entered a final decree closing Western's bankruptcy case.

member of Hold Co – Kalo Avrio, LLC – shares or shared common ownership with Western.[5] Additionally, the Debtors understand and disclose that Kalo Avrio, LLC shares common ownership/control with Property Co's/the Property's anchor tenant Gaju Market, and potentially other related tenants owned and/or controlled by Joshua Park (who Property Co understands is an officer of Gaju Market and a member of Kalo Avrio, LLC), Hyun Rhee, David Rhee and Stephanie Rhee (who Property Co understands are insiders of Gaju Market Corporation). The Debtors and their Manager Mr. Sharp, with the assistance of counsel, continue to investigate these affiliations and relationships, and any and all connections between Western and its insiders and any party in interest in these cases. But these cases involve different disputes with different secured lenders.

**C.    The Debtors' Secured Debt Obligations.**

7.    In connection with Property Co's acquisition of the Property, in December 2020, during the pandemic, Property Co obtained a loan in the principal amount of $52,500,000 from CPIF California, LLC ("CPIF"), which loan was to be secured by a first position deed of trust on the Property, an assignment of leases and rents, and Hold Co's membership interests in Property Co pursuant to a pledge agreement[6]. The initial maturity date of that loan was December 4, 2021. That loan required the payment of various fees including an origination fee of 2.5% of the loan amount and an exit fee of 1%.

8.    In January 2022, the Property was refinanced. The original loan from CPIF to Property Co was paid pursuant to: (1) a loan Property Co obtained from Lone Oak Fund, LLC ("Lone Oak") in the principal amount of $29,810,000.00 (the "Lone Oak Loan"), to be secured by a first priority deed of trust

---

[5] The Chief Restructuring Officer in Western's bankruptcy case disclosed to the bankruptcy court in Western's bankruptcy case that "Jake Sharp Capital may have entered into some type of joint venture arrangement with certain of [Western's] insiders including Mrs. Rhee and/or [Western's] anchor tenant Gaju Market with respect to Jake Sharp Capital's purchase of the Property. Thus, while I am unsure of the nature of any arrangement between one or more of the Debtor's insiders and Jake Sharp Capital, I acknowledge that Jake Sharp Capital could perhaps be deemed an 'insider' of the Debtor as that term is defined under 11 U.S.C. § 101(31) on account of its arrangement with one or more current insiders [of Western]." *See Supplemental Declaration Of Richard J. Laski In Support Of A Good Faith Finding With Respect To The Sale Of Property To Jake Sharp Capital"* (Case No. 2:20-bk-10264-SK, Docket No. 238).
[6] Holdco's sole asset is its membership interest in Property Co, and Holdco does not conduct business activities other than owning its 100% interest in Property Co. Hold Co has pledged its membership interest in Property Co to CPIF as security for the CPIF Loan.

on the Property; and (2) a loan Property Co obtained from CPIF in the original principal amount of $25,103,000.00 which was subsequently increased to $29,190,000.00 (the "CPIF Loan"), to be secured by a second priority deed of trust on the Property, an assignment of leases and rents, Hold Co's membership interests in Property Co pursuant to a pledge agreement and a limited recourse guaranty by Mr. Sharp. As a consequence, the original $52,500,000 loan from CPIF was increased to nearly $60,000,000 primarily secured by the Property.

9.   Both the Loan Oak Loan and the CPIF Loan matured on February 10, 2024. Prior to then, Property Co had initiated refinancing efforts.

10.   In January 2024, CPIF filed an action in the Superior Court for the State of California, County of Los Angeles, seeking the appointment of a receiver over the Property, pending CPIF's non-judicial foreclosure of the Property.

11.   The Debtors' bankruptcy cases were filed to provide Property Co a breathing spell from receivership proceedings,[7] and any efforts to initiate non-judicial foreclosure proceedings and other enforcement activities by CPIF against Property Co or Hold Co while they evaluate their refinancing and reorganization options and implement an appropriate strategy to either refinance/restructure their secured debt obligations.

**D.   The Debtors' Reorganization Goals.**

12.   Prior to the hearing on the above-referenced receivership application, the Debtors commenced their bankruptcy cases in order to preserve and protect the value of the Property, stay the state court action and any receivership or foreclosure efforts, and provide the Debtors a breathing spell to attempt to refinance/reorganize. The Debtors determined in the exercise of their business judgment that the best option available to the Debtors would be to obtain a breathing spell and alleviate chaos and confusion the Debtors believed the receivership action was causing, including with respect to the payment of rents by tenants who were receiving conflicting instructions from CPIF and Property Co's property manager, in

---

[7] CPIF's ex parte application for appointment of receiver was denied on January 18, 2024. CPIF then filed a noticed motion for the appointment of receiver which was set for hearing on February 27, 2024, which did not take place because of the Debtors' commencement of these bankruptcy cases the day before.

order to engage in refinancing efforts in a deliberate, unobstructed manner, engage in discussions with both CPIF and Lone Oak regarding their respective claims, and operate the Property without interference pending a refinancing/reorganization process.  The Debtors believe there is significant, and potentially massive equity in the Property.

13.    Property Co is engaging in further refinancing efforts.  It would of course be Property Co's (and Hold Co's) preference to work with Lone Oak and CPIF in achieving a collectively acceptable pathway forward in these cases but the Debtors believe that receivership and foreclosure pathways would result in a loss of value and jeopardize recoveries in these cases for all stakeholders, including, without limitation, Lone Oak, CPIF, Property Co's general unsecured creditors and tenants, and equity holders. The Debtors submit that they will be able to successfully emerge from bankruptcy within a reasonable period of time.

**D.    Property Co's Need For Use Of Rents To Pay Expenses Pending The Court's Rulings On CPIF's Adequate Protection Motion And Trustee Motion.**

14.    Property Co must be able to use the revenue generated from the operation of the Property in order to pay post-petition operating expenses, including, but not limited to, insurance, utilities, security and maintenance expenses, all of which are necessary to maintain the Property and Property Co's going concern value.  Failure to pay these expenses would likely lead to a loss of tenants or refusal to pay rents, which would reduce income.  Failure to maintain and manage the Property may also subject Property Co to breach of lease and other lawsuits.  All of the foregoing would cause substantial harm to Property Co's estate and its creditors.  In short, in order for Property Co to be able to operate its business while in Chapter 11 and to avoid immediate and irreparable harm to its business and the Property, Property Co must be able to use Rents to pay post-petition operating expenses.

15.    Lone Oak and CPIF assert an interest in the rents and other proceeds ("Rents") generated by the Property, but consent to the use of Rents for the limited purpose of paying Property Co's actual, post-petition expenses which are due and payable on or before April 30, 2024, subject to the terms of this Motion (as described above on pages 2 - 7) and the entry of the interim order attached as **Exhibit 1** to this Motion.

16.     While the Lenders consent to the use of the Rents as set forth in this Motion, the Court should be aware that CPIF contends that the Rents do not constitute property of the estate and the Debtor disagrees with that contention.  Further, Lone Oak contends that its rights, claims and liens are senior to those of CPIF in and to, among other things, the Rents.  Lone Oak and CPIF entered into a Subordination and Intercreditor Agreement at the time of their Loans to the Debtor, pursuant to which CPIF's rights in and to the Property and the proceeds thereof, including assignments of leases and rents shall be subordinate to the rights of Lone Oak.  The Debtor, Lone Oak and CPIF do agree that, to the extent the Rents constitute property of the estate, the Rents constitute cash collateral.  This Motion does not seek at this time and in connection with the interim relief requested herein a determination on whether Property Co has an interest in the Rents or whether the rents constitute property of the estate.  That dispute will be addressed in other proceedings, including the *Motion Of CPIF California, LLC For An Order Granting Adequate Protection And Prohibiting Use Of Cash Collateral Pursuant To Section 363(e) Of The Bankruptcy Code* (the "CPIF Adequate Protection Motion") [Doc 22].[8]  A hearing on the CPIF Adequate Protection Motion is scheduled for April 24, 2024, at 9:00 a.m.

17.     However, Property Co and the Lenders have separately entered into the *Stipulation Between Debtor, CPIF California, LLC, And Lone Oak Fund, LLC Regarding Collection And Deposits of Rents And Other Proceeds* [Doc 39] (the "Rent Stipulation") pursuant to which Property Co is authorized to collect rents and is required to deposit rents into a debtor-in-possession account designated as the "Specified Account" in the Rent Collection Stipulation, pending a determination by the Court regarding whether the Rents constitute property of the estate.  The Court entered an order approving the Rent Stipulation on March 25, 2024 [Doc 52].

18.

19.     Additionally, CPIF has filed the *Motion Of CPIF California, LLC For The Appointment Of A Chapter 11 Trustee* (the "Trustee Motion"), which Property Co has opposed, which is also scheduled to be heard on April 24, 2024.

---

[8] Property Co reserves the right to request relief/a determination that the Rents constitute property of the estate, and Property Co will oppose the CPIF Adequate Protection Motion.

20.    In the meantime, and pending the Court's rulings on the CPIF Adequate Protection Motion and the Trustee Motion, Property Co and the Lenders have been able to reach agreement on the payment of certain basic expenses of the Property and the provision of deposits, comprised of the following expenses and deposits:

| | Proposed Deposit | Budgeted Payments for Postpetition Services Provided through March 31, 2024 | Budgeted Payments for Postpetition Services Provided from April 1, 2024 through April 30, 2024 | Totals |
|---|---|---|---|---|
| **Maintenance and Cleaning Services - Acosta Power Sweeping Services, Inc.** | | $25,000.00 | $25,000.00 | |
| **Utilities - Los Angeles Dept. of Water and Power** | $33,970.19 | $25,000.00 | $25,000.00 | |
| **Waste Disposal Services - Athens Services** | $45,000.00 | $15,000.00 | $15,000.00 | |
| **Insurance - Inszone Insurance Services, LLC/AmTrust** | | $6,246.00 | $6,246.00 | |
| **Security Services - Ju Ma Security** | | $20,227.50 | $18,000.00 | |
| **Elevator and Escalator Services - Mitsubishi Electric US, Inc.** | | $5,200.00 | $5,200.00 | |
| **TOTAL** | **$78,970.19** | **$96,673.50** | **$94,446.00** | **$270,089.69** |

21.    These expenses are for the basic operations of the Property such as cleaning and maintenance services, insurance, utilities and security.  The deposits proposed herein are based on discussions Property Co (through its counsel) has had with counsel to Athens Services and counsel to L.A. Department of Water and Power, regarding the provision of adequate assurance of payment for post-petition services.

22.    As described above, the Lenders consent to the use of Rents for the purpose of paying the expenses set forth above, and have conditioned their consent to use Rents to pay such expenses on the

payment of a debt service payment to Lone Oak and the terms of the proposed interim order attached as **Exhibit 1** to the Declaration.

## II.    ARGUMENT

### A.    Property Co Must Be Authorized To Use Rents to Operate, Maintain and Preserve Its Business and the Property in Accordance with the Budget And The Lenders Consent.

Property Co's use of property of its estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(l) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section . . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. §363(c)(l).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363.  *See* 11 U.S.C. §1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ."  11 U.S.C. §363(a).  Section 363(c)(2) allows the use of "cash collateral" under subsection (c)(l) if:

> (A)    each entity that has an interest in such cash collateral consents; or
> (B)    the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

See 11 U. S.C. §363(c)(2)(A) and (B).

Here, the Lenders consent to the use of Rents to pay the expenses set forth in the Budget, in accordance with the terms of the proposed interim order attached as **Exhibit 1** to the annexed Declaration.

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property.  11 U.S.C. § 363(c)(2)(B); *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Tucson Industrial Partners*, 129 B.R. 614 (B.A.P. 9th Cir. 1991).  In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral

be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." *In re Dynaco Corporation,* 162 B.R. 389 (Bankr. D.N.H. 1993), *quoting In re Stein*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982).

The only sources of revenue available to Property Co to use to operate, maintain and preserve its business and the Property are the Rents generated by the Property.  As a result, Property Co has no ability to continue to operate its business and maintain and preserve the going concern value of its business and the Property unless Property Co has immediate access to, and use of, its cash to pay its ordinary operating expenses, including, but not limited to, insurance, management fees, utilities, and maintenance and other service expenses.

The expenses Property Co must be able to pay pending the Court's rulings on the Trustee Motion and CPIF Adequate Protection Motion are set forth in the Budget.  Property Co's inability to pay those expenses would cause immediate and irreparable harm to Property Co, its business and the Property, and this bankruptcy estate.  Indeed, Property Co's inability to pay basic and critical operating expenses such as utilities, and insurance would prevent Property Co from operating its business and the Property and would likely result in the loss of tenants or the refusal to pay rent, which would reduce income.  Failure to maintain the Property may also subject Property Co to breach of lease and other lawsuits.  All of the foregoing would cause substantial harm to Property Co's estate and its creditors.  As stated above, the Lenders consent to the use of Rents for the purposes and on the terms set forth herein.

**B.    The Procedural Requirements Regarding Approval of this Motion Have Been Satisfied.**

Pursuant to Bankruptcy Rule 4001(b)(1)(C), Property Co is required to serve a copy of this Motion on any entity with an alleged interest in Property Co's cash collateral, any committee appointed or on the twenty largest unsecured creditors if no committee has been appointed, and any other entity that the Court directs.  Property Co will comply with the foregoing by serving notice of the hearing on this Motion on upon the Office of the United States Trustee, all secured creditors and their counsel (if known), all general unsecured creditors and other parties in interest via email transmission, facsimile transmission or overnight mail (to the extent that contact information was available).  Moreover, Property Co served a copy of this

Motion and all supportive papers upon the aforementioned parties on the date of the filing of this Motion by overnight mail.

## III.

## CONCLUSION

**WHEREFORE**, Property Co respectfully requests that the Court enter an order:

1.    granting this Motion on an interim basis pending a final hearing;

2.    authorizing Property Co to use Rents to pay all of the expenses set forth in the Budget on an interim basis pending a final hearing in accordance with the proposed interim order attached as **Exhibit 1**;

3.    setting a final hearing on this Motion and a supplemental briefing schedule for the Court to determine at the final hearing whether to authorize the use of cash collateral/Rents after April 30, 2024; and

4.    granting such other and further relief as the Court deems just and proper.


Dated: March 29, 2024                         AGTJ13, LLC, et al.



                                        By:   _/s/ Krikor J. Meshefejian_____
                                                RON BENDER
                                                BETH ANN R. YOUNG
                                                KRIKOR J. MESHEFEJIAN
                                                LEVENE, NEALE, BENDER, YOO
                                                    & GOLUBCHIK L.L.P.
                                                Proposed Counsel for Chapter 11 Debtors
                                                and Debtors in Possession

18

### DECLARATION OF LAFAYETTE JACKSON SHARP, IV

I, Lafayette Jackson Sharp, IV, declare as follows:

1.      I have personal knowledge of the facts set forth in this Declaration and if called to do so, could and would testify competently as to such facts.

2.      I am the Manager of AGTJ13, LLC ("Property Co") and the Manager and majority member of AGTJ13 Manager, LLC ("Hold Co" and together with Property Co, the "Debtors").  MI have served as Manager for Property Co and Hold Co since approximately December 2020, when Property Co and Hold Co were formed for the purpose of and in connection with Property Co's acquisition in December 2020 of the real property located at 450 South Western Avenue, Los Angeles, CA 90020 (the "Property").

3.      I make this Declaration in support of Property Co's Emergency Motion For Entry Of An Order Authorizing Use Of Cash Collateral On An Interim Basis Pending A Final Hearing (the "Motion").

4.      On February 26, 2024, the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Hold Co's case is pending before this Court and is designated as Case No. 2:23-11412-SK.  Since the Petition Date, the Debtors have operated their businesses and managed their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.      Property Co is wholly owned by Hold Co.  Property Co is the owner of the Property.  The Property is a highly valuable, highly-coveted outdoor multi-use retail shopping center in the heart of Koreatown.  The Property is approximately 100% leased pursuant to a vacancy guarantee provided by Gaju Market[9].  The Property contains an eclectic mix of tenants, including Gaju Market (a large grocery store occupying approximately 45% of the Property) which is Property Co's anchor tenant.  The Property is managed day-to-day by a third-party property management company – Secured Properties, Inc./Secured Properties Management Group Inc.

---

[9] Pursuant to Property Co's Commercial Lease Agreement, as amended, with Gaju Market, Gaju Market has agreed to guaranty base rent of $4.00/square foot NNN and $1.50 in CAM charges with 2.5% annual increases for any vacancies or non-payment of rents, of CAM charges, such that Property Co is entitled to receive 100% of rents and CAMs through approximately November 13, 2025.  Gaju Market Corporation has now taken the position that the amendment to the lease and its vacancy guarantee are "contested" and has refused to pay March 2024 rents, CAM charges and the vacancy "backstop" in the amounts set forth in the amended lease.  Property Co is investigating this matter and reserves all rights.

6.     The Property generates rents of more than $400,000 per month, collects CAM charges of approximately $150,000+ per month, and has operating expenses of approximately $150,000+ per month. However, on March 22, 2024, Property Co received rents and CAM charges from its anchor tenant Gaju Market Corporation which were in amounts substantially less than Gaju Market Corporation has paid over the past approximately three years.  A dispute has arose between Property Co and Gaju Market Corporation regarding rents and CAM charges due to Property Co and Property Co intends to seek appropriate relief. Property Co presently has in its possession approximately $275,719.27 in the Specified Account and $4,836.34 in its other debtor-in-possession account.  Additionally, there is the sum of $298,772.69 in an account at First Republic Bank that is in the control of CPIF (which CPIF contends does not constitute property of the estate).  Additionally, Property Co expects to continue to receive rents from tenants (though it appears that Property Co's anchor tenant is refusing to pay the full amount of rent and CAM charges that it had been paying prior to the Petition Date).  Even if Property Co does not receive the full amount of rent and CAM charges from its anchor tenant, however, Property Co expects that it will have sufficient funds to pay all of the operating expenses set forth in this Motion.

7.     Property Co believes that the Property is worth potentially more than $100,000,000 and its Schedules of Assets and Liabilities list the Property at a current value of $100,000,000.

8.     Property Co purchased the Property over three years ago, in December 2020 from 450 S. Western, LLC ("Western"), for $57,500,000, pursuant to a section 363 sale conducted in Western's chapter 11 case which was commenced on January 10, 2020 and originally assigned to the Honorable Ernest M. Robles, Case No. 2:20bk-10264-SK (the case was subsequently assigned to the Honorable Sandra R. Klein).  The bankruptcy court in Western's bankruptcy case entered a sale order on October 23, 2020, authorizing and approving the sale of the Property to Jake Sharp Capital (which is an affiliate of the Debtors) or its assignee, as the winning bidder at an auction conducted in Western's bankruptcy case.  Jake Sharp Capital's designated assignee was Property Co, which acquired and has owned the Property since December 2020.

9.     Western sold the Property to Property Co years ago.  There is no material connection between Western's bankruptcy cases and these cases, except the Debtors understand and disclose that a

member of Hold Co – Kalo Avrio, LLC – shares or shared common ownership with Western.[10] Additionally, the Debtors understand and disclose that Kalo Avrio, LLC shares common ownership/control with Property Co's/the Property's anchor tenant Gaju Market, and potentially other related tenants owned and/or controlled by Joshua Park (who Property Co understands is an officer of Gaju Market and a member of Kalo Avrio, LLC), Hyun Rhee, David Rhee and Stephanie Rhee (who Property Co understands are insiders of Gaju Market Corporation). I continue to investigate these affiliations and relationships, and any and all connections between Western and its insiders and any party in interest in these cases. But these cases involve different disputes with different secured lenders.

10. In connection with Property Co's acquisition of the Property, in December 2020, during the pandemic, Property Co obtained a loan in the principal amount of $52,500,000 from CPIF California, LLC ("CPIF"), which loan was to be secured by a first position deed of trust on the Property, an assignment of leases and rents, and Hold Co's membership interests in Property Co pursuant to a pledge agreement[11]. The initial maturity date of that loan was December 4, 2021. That loan required the payment of various fees including an origination fee of 2.5% of the loan amount and an exit fee of 1%.

11. In January 2022, the Property was refinanced. The original loan from CPIF to Property Co was paid pursuant to: (1) a loan Property Co obtained from Lone Oak Fund, LLC ("Lone Oak") in the principal amount of $29,810,000.00 (the "Lone Oak Loan"), to be secured by a first priority deed of trust on the Property; and (2) a loan Property Co obtained from CPIF in the original principal amount of $25,103,000.00 which was subsequently increased to $29,190,000.00 (the "CPIF Loan"), to be secured by

---

[10] The Chief Restructuring Officer in Western's bankruptcy case disclosed to the bankruptcy court in Western's bankruptcy case that "Jake Sharp Capital may have entered into some type of joint venture arrangement with certain of [Western's] insiders including Mrs. Rhee and/or [Western's] anchor tenant Gaju Market with respect to Jake Sharp Capital's purchase of the Property. Thus, while I am unsure of the nature of any arrangement between one or more of the Debtor's insiders and Jake Sharp Capital, I acknowledge that Jake Sharp Capital could perhaps be deemed an 'insider' of the Debtor as that term is defined under 11 U.S.C. § 101(31) on account of its arrangement with one or more current insiders [of Western]." *See Supplemental Declaration Of Richard J. Laski In Support Of A Good Faith Finding With Respect To The Sale Of Property To Jake Sharp Capital"* (Case No. 2:20-bk-10264-SK, Docket No. 238).
[11] Holdco's sole asset is its membership interest in Property Co, and Holdco does not conduct business activities other than owning its 100% interest in Property Co. Hold Co has pledged its membership interest in Property Co to CPIF as security for the CPIF Loan.

a second priority deed of trust on the Property, an assignment of leases and rents, Hold Co's membership interests in Property Co pursuant to a pledge agreement and a limited recourse guaranty by Mr. Sharp. As a consequence, the original $52,500,000 loan from CPIF was increased to nearly $60,000,000 primarily secured by the Property.

12.    Both the Loan Oak Loan and the CPIF Loan matured on February 10, 2024. Prior to then, Property Co had initiated refinancing efforts.

13.    In January 2024, CPIF filed an action in the Superior Court for the State of California, County of Los Angeles, seeking the appointment of a receiver over the Property, pending CPIF's non-judicial foreclosure of the Property.

14.    The Debtors' bankruptcy cases were filed to provide Property Co a breathing spell from receivership proceedings,[12] and any efforts to initiate non-judicial foreclosure proceedings and other enforcement activities by CPIF against Property Co or Hold Co while they evaluate their refinancing and reorganization options and implement an appropriate strategy to either refinance/restructure their secured debt obligations.

15.    Prior to the hearing on the above-referenced receivership application, the Debtors commenced their bankruptcy cases in order to preserve and protect the value of the Property, stay the state court action and any receivership or foreclosure efforts, and provide the Debtors a breathing spell to attempt to refinance/reorganize. The Debtors determined in the exercise of their business judgment that the best option available to the Debtors would be to obtain breathing room and alleviate chaos and confusion the Debtors believed the receivership action was causing, including with respect to the payment of rents by tenants who were receiving conflicting instructions from CPIF and Property Co's property manager, in order to engage in refinancing efforts in a deliberate, unobstructed manner, engage in discussions with both CPIF and Lone Oak regarding their respective claims, and operate the Property without interference

---

[12] CPIF's ex parte application for appointment of receiver was denied on January 18, 2024. CPIF then filed a noticed motion for the appointment of receiver which was set for hearing on February 27, 2024, which did not take place because of the Debtors' commencement of these bankruptcy cases the day before.

pending a refinancing/reorganization process. The Debtors believe there is significant, and potentially massive equity in the Property.

16.    Property Co is engaging in further refinancing efforts. It would of course be Property Co's (and Hold Co's) preference to work with Lone Oak and CPIF in achieving a collectively acceptable pathway forward in these cases but the Debtors believe that receivership and foreclosure pathways would result in a loss of value and jeopardize recoveries in these cases for all stakeholders, including, without limitation, Lone Oak, CPIF, Property Co's general unsecured creditors and tenants, and equity holders. I believe the Debtors will be able to successfully emerge from bankruptcy within a reasonable period of time.

17.    Property Co must be able to use the revenue generated from the operation of the Property in order to pay post-petition operating expenses, including, but not limited to, insurance, utilities, security and maintenance expenses, all of which are necessary to maintain the Property and Property Co's going concern value. Failure to pay these expenses would likely lead to a loss of tenants or refusal to pay rents, which would reduce income. Failure to maintain and manage the Property may also subject Property Co to breach of lease and other lawsuits. All of the foregoing would cause substantial harm to Property Co's estate and its creditors. In short, in order for Property Co to be able to operate its business while in Chapter 11 and to avoid immediate and irreparable harm to its business and the Property, Property Co must be able to use Rents to pay post-petition operating expenses.

18.    Lone Oak and CPIF assert an interest in the rents and other proceeds ("Rents") generated by the Property, but consent to the use of Rents for the limited purpose of paying Property Co's actual, post-petition expenses which are due and payable on or before April 30, 2024, subject to the terms of the Motion (as described above on pages 2 - 7) and the entry of the interim order attached as **Exhibit 1**.

19.    Property Co and the Lenders have been able to reach agreement on the payment of certain basic expenses of the Property and the provision of deposits, comprised of the following expenses and deposits:

|  | Proposed Deposit | Budgeted Payments for Postpetition Services Provided through March 31, 2024 | Budgeted Payments for Postpetition Services Provided from April 1, 2024 through April 30, 2024 | Totals |
|---|---|---|---|---|
| **Maintenance and Cleaning Services - Acosta Power Sweeping Services, Inc.** |  | $25,000.00 | $25,000.00 |  |
| **Utilities - Los Angeles Dept. of Water and Power** | $33,970.19 | $25,000.00 | $25,000.00 |  |
| **Waste Disposal Services - Athens Services** | $45,000.00 | $15,000.00 | $15,000.00 |  |
| **Insurance - Inszone Insurance Services, LLC/AmTrust** |  | $6,246.00 | $6,246.00 |  |
| **Security Services - Ju Ma Security** |  | $20,227.50 | $18,000.00 |  |
| **Elevator and Escalator Services - Mitsubishi Electric US, Inc.** |  | $5,200.00 | $5,200.00 |  |
| **TOTAL** | $78,970.19 | $96,673.50 | $94,446.00 | $270,089.69 |

20.     These expenses are for the basic operations of the Property such as cleaning and maintenance services, insurance, utilities and security.  The deposits proposed herein are based on discussions Property Co (through its counsel) has had with counsel to Athens Services and counsel to L.A. Department of Water and Power, regarding the provision of adequate assurance of payment for post-petition services.

21.     As described above, the Lenders consent to the use of Rents for the purpose of paying the expenses set forth above, and have conditioned their consent to use Rents to pay such expenses on the payment of a debt service payment to Lone Oak and the terms of the proposed interim order.

22.     Property Co requests an emergency hearing on the Motion in order to be able to ensure vendors and utility service providers that it has received authority to pay for post-petition expenses and in order to ensure that vendors continue to provide services for the benefit of the Property.  Property Co has

made extensive efforts to arrive at a consensual arrangement with its Lenders for the payment of critical expenses pending the Court's ruling on the CPIF Adequate Protection Motion and the Trustee Motion and filed this Motion as soon as Property Co was able to reach an agreement with the Lenders and memorialize the agreement in this Motion and proposed order.  The vendors proposed to be paid have been providing services to the Property in good faith and I expect will continue to provide services to the Property, provided that arrangements are made to immediately ensure such vendors that they will receive payment for these most basic services.  The relief requested herein will ensure that the Property remains maintained, secured, insured and operating.  Property Co and its Lenders all agree that the use of Rents for this purpose

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

is appropriate and the Lenders consent to the use of Rents for the purposes set forth in the Motion and support the Motion and the payment of these proposed expenses. Certain vendors have already submitted invoices to the Debtor for March 2024 services that they have already provided and are required to be paid and should be paid as soon as possible. Additional expenses in April 2024 will arise over the course of the next few weeks and it would be extremely beneficial to Property Co and its relationships with vendors for Property Co to be able to represent to vendors that it has received Lender consent and Court approval to pay such expenses. Accordingly, I respectfully submit that an emergency hearing is warranted and necessary.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of March 2024, at Dana Point, California.

LAFAYETTE JACKSON SHARP, IV

**EXHIBIT 1**

1  RON BENDER (SBN 143364)
   BETH ANN R. YOUNG (SBN 143945)
2  KRIKOR J. MESHEFEJIAN (SBN 255030)
   LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
   Los Angeles, California 90034
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email: RB@LNBYG.COM; BRY@LNBYG.COM; KJM@LNBYG.COM

6
   Proposed Counsel for Chapter 11 Debtors and Debtors in Possession
7

8                    **UNITED STATES BANKRUPTCY COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10                        **LOS ANGELES DIVISION**

11

12 | In re: | Lead Case No.: 2:24-bk-11409-SK |

13 | AGTJ13, LLC, a Delaware limited liability | Jointly administered with: |
14 | company, | 2:24-bk-11412-SK |

15 |     Debtor and Debtor in Possession. | Chapter 11 Cases |

16 | _____ |

17 | In re: | **INTERIM ORDER GRANTING DEBTOR'S** |
   | | **EMERGENCY MOTION FOR ENTRY OF** |
18 | AGTJ Manager, LLC, a California limited liability | **AN ORDER AUTHORIZING USE OF CASH** |
   | company, | **COLLATERAL ON AN INTERIM BASIS** |
19 | | **PENDING A FINAL HEARING** |
   |     Debtor and Debtor in Possession. |
20 | _____ |

21 | ☐ Affects both Debtors | Date: TBD |
   | | Time: TBD |
22 | ☒ Affects AGTJ13, LLC only | Place: Courtroom 1575 |
   | |     255 E. Temple Street |
23 | ☐ Affects AGTJ13 Manager, LLC only |     Los Angeles, CA 90012 |

24

25

26

27

28

On April __, 2024, at ____ __.m., the Court held an emergency hearing to consider the *Debtor's Emergency Motion For Entry Of An Order Authorizing Use of Cash Collateral On An Interim Basis Pending A Final Hearing* (the "Motion") [Doc ___] filed by AGTJ13, LLC, the chapter 11 debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"). Appearances were as noted at the hearing on the Motion. Capitalized terms not otherwise defined have the same meaning ascribed to such terms in the Motion.

The Court, having read and considered the Motion, and the statements and argument of counsel to the Debtor, counsel to Lone Oak Fund, LLC ("Lone Oak") and counsel to CPIF California, LLC ("CPIF"), no opposition to the Motion having been filed or made at the hearing, notice of the Motion having been proper, with good cause appearing, orders as follows:

1. The Motion is granted as set forth in this Order.

2. The Debtor has admitted, stipulated and agreed that the Rents are the cash collateral of each Lender (but nothing herein is intended to affect the rights of any party with regard to the argument that Rents are not property of the estate).

3. The Debtor is authorized to use Rents in accordance with the Budget for the purpose of paying post-petition expenses set forth in the Budget to the extent the same are due and payable on or before April 30, 2024. The Debtor may also deviate from the Budget and pay additional expenses subject to the prior written consent of both Lone Oak and CPIF (to be provided or withheld in each Lender's sole or absolute discretion), or further Court order following notice and a hearing.

4. The Debtor shall make a debt service payment to Lone Oak in the amount of $221,090.83 for amounts owing under the Lone Oak loan documents for March 2024. Such payment will be made promptly after the entry of this Order by CPIF instructing First Republic Bank to release funds from the DACA Account directly to Lone Oak at an account specified by Lone Oak. Such agreement by CPIF to release such funds will not impair or otherwise affect any of its rights or arguments regarding ownership of the Rents or funds held in the DACA Account even though such released funds will be treated as cash collateral for purposes of this Order. For the avoidance of doubt, the prepetition claim of CPIF will not be adversely affected by the funds released from the DACA Account in connection with this Order (i.e., if

2

such funds are not property of the estate, such funds remitted to Lone Oak will not reduce CPIF's prepetition claim). This order confirms that First Republic may release such funds from the DACA account to Lone Oak.

5.     The Debtor shall make a debt service payment to Lone Oak in the amount of $221,090.83 for amounts owing under the Lone Oak loan documents for April 2024, *provided* that Property Co collects sufficient Rents in April 2024 to pay the April 2024 debt service and the April 2024 operating expenses described in the Budget from Rents collected in April together with a ten (10%) reserve calculated based on April 2024 expenses, to be paid promptly upon receipt of sufficient Rent in April 2024.

6.     The Debtor shall not disburse any Rents to pay the expenses set forth in the Budget until such expenses are actually due and payable.

7.     Prior to the payment of any of the expenses set forth in the Budget, the Debtor shall provide to the Lenders' counsel, via email, copies of invoices supporting the Debtor's proposed payments at least two calendar days in advance of payment; *provided that* each Lender may, in its sole and absolute discretion, waive any such notice or agree that payments may be made prior to the two days elapsing. Notwithstanding the foregoing, the deposits to L.A. Department of Water and Power and Athens Services do not require the provision of invoices prior to payment.

8.     As and for adequate protection of the Lenders' respective interests in the Rents, to the extent of any diminution in the value of the Lenders' interest in property of the estate as a result of the Debtor's use of cash collateral through and including April 24, 2024, the Debtor hereby grants to the Lenders a replacement lien in all post-petition assets of the Debtor's estate (except any avoidance actions arising under Bankruptcy Code Sections 544, 545, 546, 547, 548, 549, 550 or any similar provisions of the Bankruptcy Code), with such replacement liens having the same extent, validity and priority of the Lenders' respective pre-petition liens upon the Debtor's assets as of the Petition Date.

9.     The Lenders shall be entitled to a "super-priority" administrative claim, without any further action, pursuant to, and solely to the extent provided by, Section 507(b) of the Bankruptcy Code, higher in priority than any and all administrative claims to the Debtor's assets to the extent the adequate protection granted hereunder proves inadequate.

10.     The Debtor will promptly (no later than five (5) calendar days) provide each Lender with notice (with notice via electronic mail to counsel for each Lender being sufficient) of any refusal by any tenant to make any rent payment when due and payable, any alleged default asserted by a tenant related to the postpetition period, or any other act or omissions known to the Debtor that could reasonably be expected to create a negative variance of 15% of the Rents collected under any lease, measured for any given month.

11.     A final hearing on the Motion shall be held on April 24, 2024, at 9:00 a.m.

12.     Any supplemental brief and further cash collateral budget shall be filed by April __, 2024.

13.     Any opposition to the Motion shall be filed by April __, 2024.

14.     Any reply to an opposition shall be filed by April __, 2024.